NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 12 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEX JONES; KEN JONES; JO ANNE JONES, | No. 15-35856 |
| Plaintiffs-Appellants, | D.C. No. 2:15-cv-00531-MJP |
| v. | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, DBA Travelers; WASHINGTON RURAL COUNTIES INSURANCE PROGRAM; CANFIELD & ASSOCIATES, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

| | |
|---|---|
| ESTATE OF FELIPE VARGAS, | No. 16-35160 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-00555-TSZ |
| v. | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, DBA Travelers; WASHINGTON RURAL COUNTIES INSURANCE PROGRAM, | |
| Defendants-Appellees. | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Submitted December 7, 2017[**]
Seattle, Washington

Before: O'SCANNLAIN, TALLMAN, and WATFORD, Circuit Judges.

Alex Jones, Ken Jones, and Jo Anne Jones (collectively "Jones") and the Estate of Felipe Vargas ("Vargas") appeal from the district court's grants of summary judgment in their lawsuits against St. Paul Fire & Marine Insurance Company ("St. Paul") and the Washington Rural Counties Insurance Program ("WRCIP").[1] Because the facts are known to the parties, we repeat them only as necessary to explain our decision.

I

We agree with the district court that WRCIP—the non-diverse defendant—was fraudulently joined. The district court therefore properly dismissed WRCIP and exercised diversity jurisdiction over the remaining claims against St. Paul.

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[1] Jones also filed suit against Canfield & Associates ("Canfield"), the third-party administrator responsible for WRCIP's day-to-day administration. Because our analysis of the claims against WRCIP also governs the claims against Canfield, we do not treat them separately.

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotation and editorial marks omitted). A defendant seeking to dismiss a non-diverse party as fraudulently joined "is entitled to present the facts showing the joinder to be fraudulent." *Id.* (internal quotation marks omitted).

## A

Jones and Vargas failed to state breach of contract claims against WRCIP because they failed to identify any contractual duties it breached. Even assuming that they may bring claims as third-party beneficiaries of WRCIP's contract with St. Paul, the only contractual duty they allege that WRCIP breached is its failure to pay a portion of its self-insured retention for their benefit. Such argument has been forfeited because Jones and Vargas failed to present it before the district court. *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1193 (9th Cir. 2016) (en banc) ("Generally, we do not entertain arguments on appeal that were not presented or developed before the district court." (internal quotation and editorial marks omitted)).

Even were the argument not forfeited, it has no merit. The only authority Jones and Vargas cite for the proposition that WRCIP owes any share of its self-

insured retention to them is a California intermediate appellate decision holding that an insurer must treat its co-insureds equally when paying out coverage. *See Shell Oil Co. v. Nat'l Union Fire Ins. Co.*, 52 Cal. Rptr. 2d 580 (Cal. Ct. App. 1996). But that case is inapplicable because WRCIP is not an insurer but an insured, and it satisfied its duties under its contract with St. Paul when it paid the self-insured retention. Any dispute that Jones and Vargas have over insurance coverage is therefore with St. Paul and not with WRCIP.

B

Jones and Vargas also failed to state other causes of action against WRCIP because they have not plausibly alleged that WRCIP owed them any extra-contractual duties. They acknowledge that the district court was correct in ruling that WRCIP is exempted by Washington statute from the definition of "insurer," so it does not owe an insurer's statutory duties. *See* Wash. Rev. Code § 48.01.050.

Jones's and Vargas's alternative bases for extra-contractual duties are unpersuasive. WRCIP owes them no common-law fiduciary duties because neither of them (nor their public defense attorneys) "occupie[d] such a relation to" WRCIP "as to justify [them] in expecting that [their] interests will be cared for." *Liebergesell v. Evans*, 613 P.2d 1170, 1175 (Wash. 1980) (internal quotation marks omitted). Jones and Vargas also rely on a general preambulatory provision of Washington's insurance code to suggest that WRCIP owes them duties of good

4

faith related to the general business of insurance. *See* Wash. Rev. Code § 48.01.030. But under Washington law, self-insurance and the payment of self-insured retentions are not insurance, *see Bordeaux, Inc. v. Am. Safety Ins. Co.*, 186 P.3d 1188, 1191–92 (Wash. Ct. App. 2008), so there is no reason to imply duties on WRCIP from Washington's insurance law. Even if there were, Jones and Vargas have failed to plead any failure by WRCIP to act in good faith because it paid its self-insured retention, at which point any coverage duties fell to St. Paul.

II

The district court's grant of summary judgment was also correct because Jones's and Vargas's public defense attorneys were not covered as "appointed officials" under the insurance policies issued by St. Paul. "Undefined terms in an insurance contract must be given their plain, ordinary, and popular meaning." *Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 915 (Wash. 2001) (internal quotation marks omitted). We do not believe the plain meaning of "officials" includes independent contractors providing legal defense services under contract with a government entity.

Even if it were plausible that such independent contractors could be included within the ordinary meaning of "official," additional evidence makes clear that they are not in the context of the specific insurance policies at issue. The definition of "volunteer worker" in those policies expressly distinguishes between

5

"elected or appointed officials" and "independent contractor[s]" as distinct categories. Moreover, the contracts that Jones's and Vargas's public defense attorneys entered with Grant County provided that "[n]o officer, employee, or agent . . . of the COUNTY shall have any personal and/or financial interest . . . in this Contract," and the attorneys "agree[d] to indemnify, defend and hold the COUNTY [and] its elected and appointed officers . . . harmless from and against any . . . liability." The contracts also required the attorneys to procure their own legal malpractice insurance. Such contractual provisions are strong evidence that neither Grant County nor the public defense attorneys themselves believed that the attorneys were appointed officials. We will not contort the meaning of those words years after the fact to upset those expectations.[2]

**AFFIRMED.**

---

[2] Vargas also argues that he should be able to garnish Grant County's insurance policy because, he says, he won a judgment against his public defense attorney in that attorney's official capacity. But Vargas previously settled with the County and released it of "any and all manner of claims, demands, liabilities[,] or suits . . . which [he] may have had." Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), Vargas's release of Grant County also covers any liability for official-capacity claims against its supposed agents.